IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PAT CHANDLER )
)
v. ) NO. 3-12-0767
) JUDGE CAMPBELL
REGIONS BANK )

MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 33). For the reasons stated herein, Memorandum, Defendant's Motion is GRANTED.

FACTS

Plaintiff, a male, has sued his former employer, Defendant Regions Bank, for employment discrimination and retaliation. Plaintiff was a Mortgage Loan Officer ("MLO") for Defendant, and he contends that female MLOs were favored by Defendant and that he was retaliated against for complaining about this favoritism.

Defendant maintains that Plaintiff was not subjected to any adverse employment action and was not treated differently from female MLOs. Defendant has moved for summary judgment on all of Plaintiff's claims.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material

facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

GENDER DISCRIMINATION[1] - - DISPARATE TREATMENT

Title VII prohibits discrimination by an employer against any individual on the basis of race, color, religion, gender or national origin. 42 U.S.C. § 2000e-2(a). The framework for analyzing a Title VII disparate treatment claim was established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817 (1973). In order to prevail under Title VII, the Plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Id.*, 93 S.Ct. at 1824.

---

[1] An analysis of discrimination claims under the THRA is the same as under Title VII of the Federal Civil Rights Act. *Bredesen v. Tennessee Judicial Selection Commission*, 214 S.W.3d 419, 430 (Tenn. 2007).

To establish a *prima facie* case, in the absence of direct evidence of discrimination, the Plaintiff must show: (1) that he was in a protected class or minority; (2) that he was qualified for the position; (3) that despite these qualifications, he was subjected to an adverse employment decision or rejected; and (4) that he was replaced by someone outside of the protected class or was treated differently than similarly-situated, non-protected employees. *Evans v. Walgreen Co.*, 813 F.Supp.2d 897, 918 (W.D. Tenn. 2011); *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

Defendant contends that Plaintiff is unable to establish any instance of an adverse employment action. An adverse employment action in the context of a Title VII discrimination claim is a materially adverse change in the terms or conditions of employment because of the employer's actions. *Kuhn v. Washtenaw County*, 709 F.3d 612, 625 (6th Cir. 2013). Materially adverse changes in the terms and conditions of employment include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Id.*

Here, Defendant never demoted, fired, suspended or even formally disciplined Plaintiff. The changes in MLO compensation were mandated by federal law and were applied across the board to all MLOs. The "open architecture" referral system and the assignment of bank branches to the MLOs are not adverse employment actions. These actions applied to all MLOs and neither involves demotions, material losses of benefits, decreases in salaries, less distinguished titles, or significantly diminished material responsibilities.

The other alleged adverse employment action which Plaintiff claims in his Complaint is constructive discharge, that Defendant deliberately interfered with Plaintiff's ability to do his job and forced him to resign.

A constructive discharge requires a determination that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Smith v. Henderson*, 376 F.3d 529, 533-34 (6th Cir. 2004). Whether a reasonable person would have felt compelled to resign depends on the facts of each case, but the Court is to consider the following factors: (1) demotion, (2) reduction in salary, (3) reduction in job responsibilities, (4) reassignment to menial or degrading work, (5) reassignment to work under a younger supervisor, (6) badgering, harassment or humiliation by the employer calculated to encourage the employee's resignation, or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Verges v. Shelby County Sheriff's Office*, 721 F.Supp.2d 730, 748 (W.D. Tenn. 2010); *Stewart v. CUS Nashville, LLC*, 2013 WL 456482 at * 10 (M.D. Tenn. Feb. 6, 2013). The Plaintiff must show that the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and the employer did so with the intention of forcing the employee to quit, and the employee actually did quit. *Verges*, 721 F.Supp.2d at 748.

Plaintiff has failed to show that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign. As Defendant notes, Plaintiff has dropped his hostile work environment claim. He has failed to demonstrate any of the factors listed above.

Plaintiff disagrees with Defendant's policies concerning branch assignments and referrals to MLOs. He has not shown, however, that he was subjected to an adverse employment action. Even if he had, he has not shown that similarly situated female MLOs were treated differently by Defendant.

Plaintiff maintains that female employees often referred business to female MLOs. He does not explain why this is illegal or contend that Defendant required them to refer business to female MLOs. Plaintiff alleges that female MLOs got more referrals than male MLOs. He does not dispute, however, that there were more female MLOs than male MLOs working for the company. Plaintiff complains that he wanted to be assigned to the Goodlettsville branch and was not. He does not dispute, however, that the Goodlettsville branch was assigned to another male. Plaintiff does not dispute that in 2009, a female MLO received the highest number of internal referrals and a female MLO received the lowest number of internal referrals. Plaintiff does not dispute that employees at the Gallatin branch where he worked made referrals to both male and female MLOs, just not to him.

Plaintiff simply has not shown that he was treated differently from female MLOs because of his gender. The fact that he disagrees with the polices of Defendant concerning branch assignments and referrals does not mean that those policies were based upon gender.

For these reasons, Plaintiff has not established a *prima facie* case of disparate treatment based upon gender, and those claims are dismissed.[2]

GENDER DISCRIMINATION - - DISPARATE IMPACT

---

[2] Plaintiff also avers that Defendant's discipline and firing of him was discrimination which violated the Civil Rights Act of 1991. That statute, however, does not create a substantive right or an independent cause of action. *O'Barr v. United Parcel Service, Inc.*, 2013 WL 2243004 at * 12 (E.D. Tenn. May 21, 2013). Section 1981a permits victims of intentional discrimination to recover compensatory and punitive damages if they prove their claims under other substantive acts. *Id*. There is no such thing as a Section 1981a claim. *Id*.

Plaintiff also alleges a disparate impact claim. He claims that Defendant has created a policy and practice of branch assignments and "steering" leads which favor female MLOs and have a significant adverse impact on Plaintiff and other male MLOs.

In a disparate impact claim, the plaintiff-employee must identify a particular employment practice that caused a significant adverse effect on a protected group. *Howe v. City of Akron*, 723 F.3d 651, 658 (6th Cir. 2013)[3] Identifying a specific employment practice to make out a disparate impact claim is not a trivial burden and involves more than simply pointing to a generalized policy that leads to such an impact. The specific employment practices which Plaintiff identifies here are the allegedly arbitrary branch assignments for MLOs and the allegedly flawed internal referral system known as "open architecture."

Plaintiff can establish a *prima facie* case of disparate impact if he identifies a specific employment practice to be challenged and, through relevant statistical analysis, proves that the challenged practice has an adverse impact on a protected group. *Dunlap v. Tennessee Valley Authority*, 519 F.3d 626, 629 (6th Cir. 2008).

Here, the only statistical evidence upon which Plaintiff relies is that submitted by the Defendant with the Affidavit of Rena Ramsey (Docket No. 33-9). Statistical information submitted by Defendant shows that, during the relevant time period, there were more females MLOs than male MLOs, so one would expect the total referral numbers for females to be greater. Docket Nos. 33-9 and 38-8. Moreover, the numbers of referrals do not reflect a noticeable discrepancy between male

---

[3] If the plaintiff satisfies this showing, the burden shifts to the defendant-employer to demonstrate a business necessity for the practice, and then the burden returns to the plaintiff to show that there are alternative practices without a similarly undesirable discriminatory effect which would also serve the employer's legitimate interest. *Howe*, 723 F.3d at 658.

and female MLOs. For example, some of the top performing MLOs were men, and some of the bottom performing MLOs were women. Plaintiff has not filed the Affidavit or testimony of any other male MLO who believes he has been adversely impacted by Defendant's policies.

The Court finds that Plaintiff simply has not produced statistical evidence to show that the two practices in question caused a disparate impact on male employees. The fact that the policies did not create for Plaintiff the income to which he thought he should be entitled does not make the policies gender-discriminatory. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's disparate impact claim is granted, and that claim is dismissed.

## RETALIATION

Both federal and state law provide that it is an unlawful employment practice for an employer to discriminate against any employee because he has opposed any practice made an unlawful employment practice by law or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under employment law. 42 U.S.C. § 2000e-3(a); Tenn. Code Ann. § 4-21-301.

Plaintiff contends that he complained to his supervisor that the practices of assigning branches and of making referrals were discriminatory against male employees. He claims that, as a result of his complaining, Defendant subjected him to adverse employment acts of "slow walking" the process of closing his mortgages and falsely accusing him of forgery.

To establish a *prima facie* case of retaliation, Plaintiff must establish that (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the Defendant; (3) thereafter, the Defendant took an employment action adverse to the Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Warf v.*

7

*United States Dept. of Veterans Affairs*, 713 F.3d 874, 880 (6th Cir. 2013); *Tolliver v. Children's Home-Chambliss Shelter*, 784 F.Supp.2d 893, 909 (E.D. Tenn. 2011).

There is no dispute that Plaintiff engaged in activity protected by Title VII when he complained to Defendant and when he filed an EEOC Complaint. This Court has already found, however, that Plaintiff has not demonstrated that he suffered an adverse employment action. Neither the alleged "slow walking" nor the accusations of forgery (which were eventually dropped) constitutes an adverse employment action for these purposes. Even if these actions were considered adverse employment actions, Plaintiff has failed to show a connection between the alleged "slow walking" and his complaints or between the accusations of forgery and his complaints.

For these reasons, Defendant's Motion for Summary Judgment on Plaintiff's retaliation claims is granted, and those claims are dismissed.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE